# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>M. HARRIS, et al.,<br><br>　　　　Defendants. | Case No. 1:12-cv-01875 DLB PC<br><br>ORDER DISMISSING CERTAIN<br>CLAIMS AND DEFENDANTS |

Plaintiff Timothy Howard ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. On March 4, 2013, Plaintiff filed a First Amended Complaint. The Court screened the First Amended Complaint on June 7, 2013. The Court found that Plaintiff stated a First Amendment retaliation claim against Defendants M. Harris, S. Furlong and J. Martins. Plaintiff was provided the opportunity to file a Second Amended Complaint or notify the Court of his willingness to proceed only on the claims found to be cognizable. On June 20, 2013, Plaintiff notified the Court that he wished to proceed only on the cognizable claims.[1]

## I.   Legal Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on November 29, 2012.

1

1  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
2  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
3  monetary relief from a defendant who is immune from such relief.  *Id.* § 1915A(b)(1),(2).
4  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
5  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a
6  claim upon which relief may be granted."  *Id.* § 1915(e)(2)(B)(ii).

7        A complaint must contain "a short and plain statement of the claim showing that the pleader
8  is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but
9  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
10  do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550
11  U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a
12  claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  While factual
13  allegations are accepted as true, legal conclusions are not.  *Id.*

14  **II.**   **Summary of First Amended Complaint**

15        Plaintiff was previously incarcerated at California Substance Abuse Treatment Facility
16  ("SATF") in Corcoran, California, where the events giving rise to this action occurred.  Plaintiff
17  names as Defendants: investigative service unit ("ISU") officers C. Lane, M. Harris, and J. Martins;
18  institutional gang investigator ("IGI") S. Furlong and R. A. Dean; inmate appeals coordinators R.
19  Hall, R. Gomez, and T. Zinani; investigative lieutenant to appeals D. Goss; associate warden S.
20  Sherman; Office of Correctional Safety ("OCS") special agent David Perez and R. Nadeau; and
21  Captain R. Briggs and officer J. D. Lozano at the Sacramento Chief of Appeals branch.

22        Plaintiff alleges the following.  On August 21, 2009, Plaintiff was transferred to SATF with
23  no property and placed on management status in the administrative segregation ("ad seg") unit.  First
24  Am. Compl. ("FAC") ¶ 18.  On December 29, 2009, Plaintiff was rehoused to ad seg cell No. 126.
25  FAC ¶ 19.  On January 1, 2010, Plaintiff was issued property belonging to another inmate, Gerald
26  Howard.  FAC ¶ 20.  On February 2, 2010, Plaintiff submitted an inmate appeal regarding his
27  property.  FAC ¶ 21.  On February 2, 2010, a correctional officer was stabbed at C Facility.  FAC ¶
28  22.  On February 3, 20120, Defendant Lane and John Doe approached Plaintiff to ask him about the

staff assault. FAC ¶ 24. Plaintiff never received notice by any CDCR forms that Plaintiff was implicated in the staff assault. FAC ¶ 25.

On February 8, 2010, Plaintiff filed with Internal Affairs his complaint regarding inappropriate actions by staff against Plaintiff, including violating his rights to the law library, court, and medical care. FAC ¶ 27. On March 10, 2010, Defendants M. Harris and J. Martins questioned Plaintiff regarding the staff assault. FAC ¶ 28. Plaintiff against requested that he be issued a formal CDCR form, and forwarded them a copy of a CDCR 602 appeal dated that day. FAC ¶ 28. On March 17, 2010, Plaintiff submitted another 602 appeal complaining that he was again questioned regarding the staff assault and has not been issued a 114 D or 115 alleging any charges. FAC ¶ 29. Defendant Harris had stated to Plaintiff that he was not answering Plaintiff's appeal, and that if Plaintiff wanted to play "the paper game," Defendant Harris would screw Plaintiff and keep him locked in the Security Housing Unit ("SHU") for the rest of his life. FAC ¶ 29. Defendant Martins verbally agreed with Defendant Harris' plan to file paperwork against Plaintiff. FAC ¶ 29. Defendant Harris tore up Plaintiff's March 10, 2010 appeal, including his attached exhibits. FAC ¶ 29.

On March 19, 2010, Plaintiff was charged with a 115 Rules Violation Report for possession of a weapon. FAC ¶ 40. Plaintiff's medical appliances were taken away by the doctor. FAC ¶ 40.

On April 12, 2010, Plaintiff was issued a validation package by officer R. Velasquez, consisting of four items. FAC ¶ 34. The 128-B for symbols, authored by Defendant Harris, stated that on March 19, 2010, Defendant Harris conducted a search of Plaintiff's property and found a hand-drawn picture of a dragon, which is indicative of membership/association with the Black Guerrilla Family ("BGF"). FAC ¶ 36. The 128-B for offenses, authored by Defendant Martins, indicated that during an alleged interview with Plaintiff, he stated that he had assaulted an officer at CSP-Cor on August 21 as the anniversary of the incident involving George Jackson. FAC ¶ 37. The 128-B for gang information, authored by Defendant S. Furlong, duplicates a chrono dated June 21, 2001, in which another officer stated that he overheard Plaintiff speaking Swahili with a BGF member. FAC ¶ 38. The 1030 confidential disclosure form, authored by Defendant Furlong, referenced a confidential memorandum dated April 6, 2010, in which Defendant Harris stated that he

searched Plaintiff's property and found a Prison Focus news article published on George Jackson in the month of August. FAC ¶ 39.

Plaintiff contends that the information used in the package was false. First, CSP-Cor has no record of sending Plaintiff's prison property to SATF, thus Plaintiff's property did not contain any of these alleged gang-related documents. FAC ¶ 44. Second, the ad seg Isolation Log Book does not indicate that Defendants signed in to search Plaintiff's property on the date that they stated in their reports. FAC ¶ 44. Plaintiff was also away from the prison at court on March 19, 2010, and thus could not have been interviewed then. FAC ¶ 43. Regarding the 128-B for gang information, Plaintiff contends that there was no 128-B, but a 115 Rules Violation Report issued for Plaintiff speaking Swahili with a known BGF member. FAC ¶ 67. However, that 115 was dismissed as speaking Swahili is itself not a prison gang language and not punishable, only conversations that indicate gang activity. FAC ¶ 67.

Plaintiff's rebuttal was reviewed by Defendants R. A. Dean, D. Perez, and R. Nadeau. FAC ¶ 47. Plaintiff explained that 1) he had no property at SATF, 2) he was out to court on March 19, 2010, and thus could not have been interviewed then, 3) there was no 128-B dated June 21, 2001 in Plaintiff's file prior to his validation. FAC ¶ 47. Plaintiff was nonetheless validated on April 27, 2010 as a BGF member. FAC ¶ 45.

Plaintiff appealed the validation on April 28, June 6, July 8, July 20, August 1, and November 3 of 2010. Defendants R. Hall, R. Gomez, and T. Zinani did not process Plaintiff's appeal. FAC ¶ 48. Plaintiff forwarded the November 3 appeal to the office of Internal Affairs and the SATF appeal coordinator. Defendant Zinani had screened out Plaintiff's appeal as untimely, despite Plaintiff's explanations. FAC ¶ 48.

Plaintiff was eventually transferred to California Correctional Institution, and was able to appeal his gang validation. FAC ¶ 51. Plaintiff eventually filed the 602 appeal with SATF officials on July 18, 2011. FAC ¶ 52. Defendant Goss responded at the First Level of review, finding that Plaintiff had been properly validated. FAC ¶¶ 52, 53. At the second level of review, Defendant Sherman denied the appeal, citing to Defendant Goss's findings. FAC ¶ 55. Defendants Briggs and Lozano responded to Plaintiff's appeal at the third level of review. FAC ¶ 60. They also supported

the previous findings and denied Plaintiff's appeal.  FAC ¶ 60.

Plaintiff contends a violation of the First Amendment, Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment.  Plaintiff requests as relief: declaratory judgment, nominal damages, compensatory damages, punitive damages, reversal of the gang validation and that all false documents in his central file be expunged, release from SHU, and costs of suit.[2]

### III. Analysis

#### A. Due Process- Initial Administrative Segregation

Plaintiff alleges a violation of his due process rights when he was held in administrative segregation without being formally charged of the February 2, 2010 staff assault.  Plaintiff complains that Defendants questioned him regarding the staff assault.  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  *Id.*  Liberty interests may arise from the Due Process Clause itself or from state law.  *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).  The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  *See id.*  With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995).  Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

Plaintiff has not sufficiently alleged the loss of a liberty interest by being confined in administrative segregation.  It appears that when Plaintiff was first transferred to SATF, he was placed in administrative segregation because of an unrelated rules violation at Corcoran State Prison[3].  Thus, Plaintiff fails to allege how his questioning by Defendants regarding the staff assault on February 2, 2010 at SATF was an atypical and significant hardship since his initial placement in

---

[2] Plaintiff also requests reasonable attorney's fees.  Plaintiff is proceeding pro se and is thus not entitled to attorney's fees under 42 U.S.C. § 1988.  *Friedman v. Arizona*, 912 F.2d 328, 333 n.2 (9th Cir. 1990).

[3] Plaintiff fails to allege what the rules violation was which led to Plaintiff's transfer to SATF.

5

administrative segregation was for another rules violation occurring at Corcoran State Prison.

### B. First Amendment – Retaliatory Gang Validation

Plaintiff alleges that Defendants R. A. Dean, C. Lane, M. Harris, J. Martins, and S. Furlong retaliated against Plaintiff for filing 602 appeals. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "'(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). Inmates have a First Amendment right to file inmate grievances. *Id.*

Plaintiff has alleged sufficient facts to state a cognizable retaliation claim against Defendants M. Harris, S. Furlong, and J. Martins. Defendants Harris and Martins allegedly stated that they would file paperwork against Plaintiff for his filing of inmate appeals. Defendants Harris and Furlong allegedly created false documentation to validate Plaintiff as a member of the BGF.

Plaintiff fails to allege a cognizable retaliation claim against Defendants C. Lane and R. A. Dean. Plaintiff alleges only that Defendant Lane asked Plaintiff about the February 2, 2010 staff assault, which is not an adverse action sufficient to state a claim. Plaintiff alleges only that Defendant Dean reviewed Plaintiff's rebuttal to the gang validation package, which is not an adverse action sufficient to state a claim.

### C. Conspiracy – Retaliation

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th

Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541). Plaintiff fails to allege facts which indicate that Defendants Dean, Lane, Harris, Martins, and Furlong conspired to validate Plaintiff as a gang member in retaliation for Plaintiff filing inmate appeals.[4]

### D.   Due Process - Gang Validation

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin*, 515 U.S. at 481-84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Plaintiff alleges that he is confined to a cell almost twenty-four hours a day, denied contact visits, exercise, and denied work credits and trade.[5]

Plaintiff has not stated a due process claim. Placement in administrative segregation, or the SHU if done for administrative rather than disciplinary purposes, requires notice to the prisoner, an opportunity for the prisoner to submit information, and non-adversarial review of the information supporting placement. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). A prison gang validation proceeding is subject to the "some evidence" standard where it is an administrative strategy rather than a disciplinary action. *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). There is no independent assessment of witness credibility or reweighing of evidence; rather "the relevant question is whether there is any evidence in the record that could support the conclusion." *Hill*, 472 U.S. at 455-56.

Plaintiff contests that credibility of the evidence used to validate him as a member of the BGF. Under federal due process, however, some evidence exists. *Hill*, 472 U.S. at 455-56. The Court does not reweigh the credibility of the evidence. Thus, Plaintiff fails to state a federal claim for violation of his due process regarding his gang validation against Defendants Harris, Martins, and Furlong.

---

[4] Plaintiff contends that Defendants also conspired to retaliate against Plaintiff because of the February 2, 2010 staff assault. Plaintiff fails to state a retaliation claim. Retaliation as a legal claim arising under the First Amendment occurs only when defendants take adverse action against Plaintiff for his First Amendment activity.

[5] Plaintiff's Claim IV and VII are related and will be combined.

7

### E.  Supervisory Liability

Plaintiff complains that Defendants Dean, Goss, Hall, Gomez, Zinani, Sherman, Perez, Nadeau, Briggs, and Lozano failed to act to prevent constitutional violations. The Court construes Plaintiff's claims as pursuant to a theory of supervisory liability. The term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 676. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct. *Id.* at 677. When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff fails to state a claim for supervisory liability against all Defendants. As to Defendants Dean, Perez, and Nadeau, they allegedly approved Plaintiff's validation as a member of BGF. However, as stated previously, some evidence existed under federal due process for such a finding. Thus, Defendants Dean, Perez, and Nadeau did not violate Plaintiff's constitutional rights.

As to Defendants Hall, Gomez, and Zinani, Plaintiff submitted inmate appeals which they did not process. Again, Plaintiff fails to state a claim for violation of federal due process regarding his gang validation and thus fails to state a claim against them for failing to act to prevent the validation.

As to Defendants Goss, Sherman, Briggs, and Lozano, Plaintiff submitted an inmate appeal which they processed and found that Plaintiff was properly validated. As stated previously, some evidence existed under federal due process for such a finding. Thus, Defendants Goss, Sherman, Briggs, and Lozano did not violate Plaintiff's constitutional rights.

### F. Inmate Grievance Process

Plaintiff alleges that Defendants Harris, Martins, Hall, Gomez, and Zinani denied Plaintiff's right to file inmate grievances. Plaintiff states a cognizable First Amendment claim against Defendant Harris and Martins, as he alleges that they tore up his inmate appeal.

Plaintiff fails to state a claim against Defendants Hall, Gomez, and Zinani. Plaintiff complains that these Defendants failed to process his appeal. The existence of an inmate appeals process does not create a due process right upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

### G. Eighth Amendment

Plaintiff alleges that Defendants Dean, Lane, Harris, Martins, Furlong, Perez, and Nadeau violated his Eighth Amendment rights by validating him as a BGF member and retaining him in the SHU.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid liability by

presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Id.* at 835.

Plaintiff fails to state a claim. Placement in the SHU by itself is not cruel and unusual punishment in violation of the Eighth Amendment. *See Toussaint v. Yockey*, 722 F.3d 1490, 1494 n.6 (9th Cir. 1984) ("Even an indeterminate sentence to punitive isolation does not without more constitute cruel and unusual punishment."). Plaintiff fails to allege facts which indicate that Defendants knew of and disregarded an excessive risk of serious harm to Plaintiff's health by placing him in the SHU as a result of his validation as a BGF member.

### H.   California Penal Code Sections 147 and 118.1

Plaintiff alleges that Defendants violated California Penal Code Sections 147 and 118.1. Penal Code Section 118.1 concerns filing of a false report. However, Section 118.1 is not actionable in a civil lawsuit. *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1167 (E.D. Cal. 2010).

Penal Code Section 147 concerns willful inhumanity or oppression towards a prisoner. Again, Section 147 is not actionable as a private right of action. *Id.*

### I.   Title 15 Violation

Plaintiff contends that Defendants violated Title 15, Section 3378(c)(3) of the California Code of Regulations by validating Plaintiff without the required points needed. A violation of the California Code of Regulations fails to state a claim. No private right of action exists for violation of Title 15 regulations. *See*, *e.g.*, *Parra v. Hernandez*, No. 08-cv-0191–H (CAB), 2009 WL 3818376, at *8 (S.D. Cal. Nov. 13, 2009); *Davis v. Kissinger*, No. CIV S–04–0878 GEB DAD P, 2009 WL 256574, at *12 n.4 (E.D. Cal. Feb.3, 2009), *adopted in full*, 2009 WL 647350 (Mar. 10, 2009).

**IV.     Conclusion and Order**

This action SHALL PROCEED against Defendants M. Harris, S. Furlong, and J. Martins for retaliation in violation of the First Amendment.[6]

All further claims and Defendants ARE DISMISSED.

IT IS SO ORDERED.

Dated:    **July 31, 2013**                                    /s/ Dennis L. Beck
                                                          UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff will be instructed on service by separate order.