UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| TIMOTHY HOWARD,<br><br>        Plaintiff,<br><br>vs.<br><br>C. LANE, *et al.*,<br><br>        Defendants. | Case No. 1:12-cv-01875-RRB<br><br>**<u>ORDER GRANTING<br>MOTION FOR SUMMARY JUDGMENT<br>AT DOCKET 55</u>** |

## I.    PENDING MOTION

At **Docket 55** Defendants M. Harris and J. Martin filed a Motion for Summary Judgment. Plaintiff Timothy Howard, a state prisoner appearing *pro se*, has opposed the motion[1] and Defendants have replied.[2]  This matter being ripe for decision, it is submitted for decision on the moving and opposing papers without oral argument.[3]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving

---

[1]  Docket 57 (Memorandum), Docket 58 (Statement of Undisputed Facts).

[2]  Docket 59.

[3]  LR 230(l).

party is entitled to judgment in its favor as a matter of law.[4] Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[5] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact for trial.[6] The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. In order to show that a genuine issue of material fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint.[7] Material facts are those that may affect the outcome of the case.[8] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[9] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

---

[4]  Fed. R. Civ. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[5]  Fed. R. Civ. P. 56(e).

[6]  *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002).

[7]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[8]  *Id.*

[9]  *Id.*

functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[10] The evidence of the non-moving party is to be believed and all justifiable inferences are drawn in his favor.[11] The moving party has the burden of showing there is no genuine issue of material fact; therefore, he or she bears the burden of both production and persuasion.[12] The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.[13] There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[14]

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses.[15] Instead, it generally accepts as true statements made under oath.[16] However, this rule does not apply to conclusory statements unsupported by underlying facts,[17] nor may the court draw unreasonable inferences from the

---

[10] *Id.* at 255.

[11] *Id.*

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

[13] *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010); *see Celotex*, 477 U.S. at 325.

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[15] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[16] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005).

[17] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

evidence.[18] "To survive summary judgment, a plaintiff must set forth non-speculative facts, not sweeping conclusory statements."[19]

## III.   BACKGROUND/ISSUES PRESENTED

Howard's complaint arises out of his validation as a member of the Black Guerilla Family gang while held in Administrative Segregation ("Ad-Seg") at the California Substance Abuse Treatment Facility ("CSATF"). Howard is presently incarcerated at the Pelican Bay State Prison.

In his Amended Complaint Howard raised several claims. In screening this Court dismissed all claims except his First Amendment claim as against Defendants M. Harris, J. Martin, and S. Furlong.[20] In his First Amendment claim Howard alleges that Defendants Harris and Martin stated they would file paperwork against him, ostensibly in retaliation for Howard having filed inmate appeals. As against Defendants Harris and Furlong, Howard alleges that they created false documentation to validate him as a member of the Black Guerilla Family ("BGF") gang. Defendants Harris and Martin answered.[21] The Court dismissed the action as

---

[18] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir. 1988).

[19] *Calfasso, U.S. ex rel. v. Gen Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1061 (9th Cir. 2011).

[20] Docket 8.

[21] Docket 23.

against Defendant S. Furlong on the basis that the Screening Order as against Furlong had been improvidently entered in error.[22]

In their motion Defendants contend that there is no evidence to support Plaintiff's allegations that Defendants, or either of them: (1) Took any adverse action against Plaintiff; (2) Plaintiff's frivolous inmate grievance was not protected conduct; (3) There is no causal connection between Defendant's allegedly adverse action and any protected conduct; and (4) Defendants had a legitimate penological interest in drafting the memoranda used in validating Plaintiff's gang validation. Defendants further contend that they are entitled to qualified immunity.

In his opposition Plaintiff contends that: (1) Defendants took an adverse action against him; (2) The grievance was not frivolous and his conduct was protected; (3) A causal connection exists between Defendants' adverse action and the protected conduct; and (4) Defendants had no legitimate penological interest in drafting the memoranda used in validating Plaintiff as a gang member. Plaintiff also argues that: (1) Defendants violated his due process rights by interviewing him in connection with an assault on a staff member; (2) Retaliated against him for submitting internal grievances against Defendants; (3) Deliberately falsified documents used in validating him as a member of BGF gang; and (4) Permitted the use of outdated documents to be used in the gang validation process.

For the most part the relevant facts in this case are undisputed.

---

[22] Docket 34.

1.      On August 21, 2009, while incarcerated at Corcoran State Prison ("CSP"), Howard attempted to murder a correctional officer.[23]  Subsequently, Howard was transferred to CSATF where the incidents giving rising to this action occurred.

2.      On or about February 2, 2010, an assault on a correctional officer occurred at Corcoran.

3.      On or about February 2 and February 3, 2010, Howard was interviewed concerning the February 2 assault by two, or more, correctional officers, not the Defendants.

4.      On or about March 10, 2010, Howard was interviewed by Defendants Harris and Martin concerning the February 2, 2010, assault.[24]

5.      Prior to the interview, Howard, in the presence of Defendants, added their names to a grievance he intended to file, and handed a copy to one of the Defendants. One of the Defendants tore up the appeal and disposed of it in a trash receptacle. Howard, however had another copy. Moreover, in his deposition, Howard testified that he did not submit that grievance; instead he submitted a new grievance on March 17, 2010.[25]

6.      Prior to interviewing Howard, Harris searched property located in the Ad-Seg property room that was provided to him by the property room officer as belonging to Howard.

---

[23] The record reflects that Howard was not only convicted of that crime, but in his deposition, admitted it.  Howard Deposition, September 10, 2014, pp. 14–15, 22.

[24] Although there may be a dispute as to the exact date Howard was interviewed, the fact that he was interviewed is undisputed.  For the purposes of ruling on the pending motion, the Court accepts the date asserted by Howard, the non-moving party.

[25] Howard Deposition, pp. 41–42.

Among the items found in that property were several articles written by George Jackson and hand-drawn gang symbols.[26]

      7.     In his CDC 126-B dated March 23, 2010, Martin stated:

On Friday, March 19, 2010, while assigned to the Investigative Services. Unit (ISU) at the California Substance Abuse Treatment Facility and State Prison (CSATF/SP) at Corcoran; I assisted in an interview with Inmate Howard, Timothy, J95136 Aka "Hover Deuce", in reference to his current gang status. During the interview, Howard admitted the reason he utilized the date of August 21 to assault the cop next door (referring to the California State Prison Corcoran) was because it was the anniversary of the incident involving George Jackson on August 21, 1971.

Howard further explained that George Jackson murdered (1) one, correctional staff member at the Correctional Training Facility (CTF), but that he murdered (3) three, correctional employees during his escape attempt at San Quentin State Prison.

George Jackson is held in one of the highest esteemed positions by the Black Guerrilla Family (BGF). George Jackson, though never validated as a member of the BGF, is attributed as being the founder of the BGF, during his incarceration at San Quentin tn the 1960's. On Friday, August 21, 2009, Howard committed the act of "Battery on a Peace Officer/Attempted Homicide with a Weapon" (Refer to incident log#COR-04A-09-08-0435a1). By conducting the assault, Howard is showing his good standing allegiance and loyalty to the BGF.

Per California Code of Regulations (CCR), Title 151 section 3378 (c)(8)(l), this document should be considered as one source (self admission) towards the validation of Inmate Howard as an active member/associate of the BGF. Inmate Howard's behavior should be closely monitored and documented whenever gang activity and/or association is present. If and when additional

---

[26] Declaration of M. Harris in Support of Motion for Summary Judgment, Docket 55-4. The Court notes that although Howard "disputes" this statement, his disagreement is that the property was that of another inmate, not his. Notably, Howard does not state any facts, let alone offer any evidence, that refutes the veracity of the statement itself.

information becomes available Inmate Howard's gang status should be re-evaluated.[27]

8.      In his CDC 128-B dated March 23, 2010, Harris stated:

On Friday, March 19, 2010, while assigned to the Investigative Services Unit (ISU) at the California Substance Abuse Treatment Facility and State Prison (CSATF/SP) at Corcoran; I conducted a property search of the legal/personal paperwork of Inmate HOWARD, Timothy J95136 Aka "Hoover Deuce", in reference to his current gang status. During the search I discovered a hand-drawn picture of a dragon. The aforementioned picture is indicative of membership/association to the prison gang known as the Black Guerilla Family (BGF).

Within the BGF prison gang, the dragon symbol gained significance through the BGF'S founder, George Jackson, referencing the "dragon" within his writing's and citing the dragon during his breakout attempt from San Quentin State Prison on August 21, 1971. The BGF use the dragon to signify membership gained additional importance through Jeffrey Gaulden, 809053, Aka "Joka" (Swahili for dragon), previous Supreme Commander of the BGF, who established the ranking structure and constitution for the BGF. The image of a dragon is synonymous with the BGF and is a recognized source item within CDCR for membership/association with the BGF prison gang.

By maintaining this symbol, HOWARD is showing his allegiance and membership with the BGF.
                    [Image of Dragon omitted.]
Per California Code of Regulations (CCR), Title 15, section 3378 (c)(8)(B), this document should be considered as one source (symbols) towards the

---

[27] Docket 58, p. 94 (Exhibit BB). The Court also notes that there is a Confidential Memorandum dated April 6, 2010, authored by Harris, in which he essentially restates the information contained in the CDC 128-B. *See* Docket 58, p. 100 (Exhibit EE).

Although Howard disputes that he stated the reason he assaulted the cop on August 21, his three-paragraph response does not really address whether he did or did not make the statement attributed to him. Indeed, at least in part, the extract from his deposition to which he refers tends to support at least the inference in that statement, i.e., that the date of August 21 had some connection with anniversary of the incident involving George Jackson. *See* Howard Deposition, pp. 20–22.

validation of Inmate HOWARD as an active associate/member of the prison gang known as the Black Guerrilla Family. Inmate HOWARD'S behavior should be closely monitored and documented whenever gang activity and/or association is present. If and when. additional information becomes available Inmate HOWARD'S gang status should be re-evaluated.[28]

9.      The property searched by Harris was that of another inmate, Gerald Howard,

Prisoner No. G-21794.

10.      Howard was validated as a member of the BGF on May 25, 2011, partially on

the basis of the CDC 128-B's submitted by Defendants Martin and Harris.[29]

11.      Howard was denied relief at the Director's Level in a written decision, which

exhausted his administrative remedies.[30]   In denying relief the Director held:

I APPELLANT'S ARGUMENT: It is the appellant's position that the Institution Gang Investigator (IGI) at the California Substance Abuse Treatment Facility (SATF) retaliated against him by validating him as a member of the Black Guerrilla Family prison gang (BGF) for filing a grievance. The appellant contends that on or about June 27, 2011, the IGI Officer at the California Correctional Institution (CCI) provided him with a copy of the CDC Form 128-B2, Gang Validation/Rejection Review Chrono notice dated June 23, 2011, approving the appellant's validation as a BGF member. The appellant asserts that the validation is based on false information. Specifically, the appellant claims that the symbols used as a source point towards his validation received from his property could not have existed due to him never receiving his property from the Corcoran State Prison and IOI/Investigative Services Unit (ISU) staff

---

[28] Docket 58, p. 98 (Exhibit DD).

[29] Docket 58, p. 115 (Exhibit JJ).

[30] Cal. Code Regs. tit. 15, § 3084.1(b) ("Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower level reviews are subject to modification at the third level of review."). Section 3084.7 provides for three levels of review, the third level conducted by the Secretary of the California Department of Corrections and Rehabilitation, or by a designated representative.

entries note in the Administrative Segregation Unit (ASU) isolation logs as he was out to court on the days his property was searched. The appellant requests on appeal for the validation as a BGF member be "surrendered," the ASU isolation logbook be reviewed for the purpose of identifying which ISU/IGI staff were in the building on March 18 and March 19, 2010, as well as an investigation into the matter.

**II SECOND LEVEL'S DECISION**: The reviewer found that a thorough review and consideration of the appellant's appeal and respective issues have been completed. The reviewer noted the investigation revealed that on June 23, 2011, the appellant was validated as a member of the BGF. The appellant was advised that California Code of Regulations, Title 15; Section (CCR) 3378(c)(3) states in part, "A member is an inmate/parolee or any person who has been accepted into membership by a gang. This identification requires at least three (3) independent source items of documentation indicative of actual membership. Validation of an inmate/parolee or any person as a member of a prison gang shall require at least one (1) source item be a direct link to a current or former validated member or associate of the gang." CR 3378(c)(6) states in part, "The verification of an inmate/parolee's gang identification shall be validated or rejected by the chief, office of correctional safety (Office of Correctional Safety (OCS)), or a designee." The reviewer noted. that four out of four items submitted by IGI Dean met the validation requirements. The reviewer also noted that the confidential memorandum that met the validation requirements was deemed reliable in accordance with CCR 3321. All source items that were referenced in the validation review were disclosed to the appellant at the time he was notified of his interview by the IGI. The reviewer noted that the appellant's interview was documented along with his opinion on each of the source items and submitted to the OCS with the appellant's validation package. The reviewer determined that the appellant failed to provide any evidence to support his claims. Nonetheless, the Second Level of Review (SLR) partially granted the appellant in that the appellant's appeal issued was investigated.

**III THIRD LEVEL DECISION**:  Appeal is denied.

    **A. FINDINGS**: The institution has adhered to the provisions of CCR 3378 and CDCR Operations Manual, Section (DOM) 52070 in referring the appellant to the OCS relative to his gang activity. The Director's Level of Review reviewed the validation documentation and notes that a committee comprised of OCS special agents determined that sufficient information exists *to* corroborate gang activity.  The appellant's association with the prison gang has been appropriately reviewed by the

OCS and and [*sic*] documented on a CDC Form 128-B2, Gang Validation/Rejection Review Chrono. While the appellant is challenging this information as false, he has not presented specific information on his behalf to contradict the validation. The appellant merely presents unsupported statements that the SATF IGI used sources that have no factual evidence relative to validating him as a gang member. The TLR finds the appellant's arguments lack merit and has been thoroughly refuted by the evidence presented. Pursuant to CDCR regulations, the debriefing process or verification of inactive status are two methods by which the appellant could be released from the Security Housing Unit. The examiner finds that the reviewer has demonstrated that the IGI staff completed an investigation into the appellant's prison gang activity and submitted four separate documents to the OCS for evaluation and disposition. The OCS staff validated the appellant as an associate of the BGF based upon the four source documents, which were deemed reliable. As for the appellant's claim that the validation documents are not legitimate, these documents along with the appellant's rebuttal were reviewed by the OCS. Despite the appellant's dissatisfaction with the SLR decision, further review at the TLR is not warranted.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

**B. BASIS FOR THE DECISION:**
CCR: 3001, 3004, 3023, 3084.1, 3084.5, 3270, 332l, 3378 DOM: 52070.1, 52070.2, 52070.3, 52070.6.1, 52070.6.4, 52070.16.1, 52070.17.2, 52070.18.l, 52070.18.2, 52070.19, 52070.19.2, 52070.20, 52070.20.2

**C. ORDER:** No changes or modifications are required by the Institution. This decision exhausts the administrative remedy available to the appellant within CDCR.[31]

---

[31] Docket 58, pp. 144-45 (Exhibit KK).

IV.    **DISCUSSION**

The "adverse action" taken in this case was Howard's validation as member of the BGF gang.  Although based in part on the CDC 128-B's prepared by Harris and Martin, the materials used in the validation were submitted by a third person, reviewed by two other Institutional Gang Investigators,[32] and, as noted above, the validation as a gang member itself was done by yet two others.[33]  This validation was upheld on administrative appeal.  While it may be true that the information provided by Harris  and Martin was part of the chain of evidence upon which Howard was validated,[34] neither Martin nor Harris took any "adverse action" with respect to Howard.

Second, the fact that the gang materials seized by Harris belonged to another inmate, was raised by Howard, and presumably considered by the prison authorities in connection with the administrative appeal process.[35]  Nor is there any evidence that, at the time he searched the items provided by the property clerk as allegedly belonging to Howard, Harris knew, or had any reason to believe, that the materials did not belong to Howard.[36]

---

[32] Docket 58, p. 127 (Exhibit KK).

[33] Docket 58, p. 115 (Exhibit JJ).

[34] The Court notes that nowhere in his First Amended Complaint does Howard contend that Martin submitted any false documentation.

[35] *See* Docket 58, pp. 118, 130–32 (Exhibit KK)

[36] It appears from the record that, prior to the date that Harris obtained the property and searched it, Howard had filed several complaints with prison authorities seeking to have his property transferred from CSP to CSATF.  Even if the Court were to assume that Harris had knowledge of Howard's attempts to obtain his property, the un-refuted fact is that Harris was

(continued...)

With respect to Howard's retaliation claim, analysis starts with the preposition that a "chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a raise a retaliation claim."[37] "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."[38] Actions taken in retaliation of the exercise of a constitutional right do not further a legitimate penological goal.[39] Nor, are Defendants entitled to qualified immunity with respect to the retaliation claim.[40]

Accepting as true the statements Howard alleges were made by Harris and Martin at the time of the March interview with respect to taking some adverse action against Howard,[41]

---

[36](...continued)
provided the property by the CSATF property officer as property belonging to Howard. Harris was entitled to rely upon this information. Nothing in the law or the prison regulations require a investigating correctional officer to accept the protestations of a prisoner that contradict the information provided by another prison officer.

[37] *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

[38] *Id.* (quoting *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (internal quotation marks omitted).

[39] *Id.* at 1289.

[40] *Id.* at 1290.

[41] Docket 58, Plaintiff's Statement of Undisputed Facts No. 19, pp. 5–6. In his September 10, 2014 deposition Howard testified that, with respect to the March 10 CDC 602, Harris stated: "I ain't interested in this." [Deposition, p. 33] "See, this is what I can do to you." "At a stroke of the pen . . . I can keep you the whole rest of your life." "I'll validate you." [Deposition pp. 36–37] "What I am going to do is teach you a lesson about filing paperwork on us." [Deposition, p. 52]   With respect to Martin, Howard testified that "[Martin] just
(continued...)

the Court agrees with Defendants that their subsequent actions do not give rise to an actionable retaliation claim.

First, while *Bruce* lends some support to Howard's position, the facts in this case materially differ. Unlike the situation in *Bruce*: (1) the investigation into Howard's gang activity was initiated and the evidence provided by Harris and Martin was obtained *prior to* the time Howard filed his complaint against them; (2) there is no evidence that any of the complaints Howard made against other correctional officials had been decided in Howard's favor; (3) there was no prior validation proceeding in which it was determined that the evidence was insufficient to validate Howard as a BGF member; (4) contrary to Howard's bald allegation, it does not appear from the record that the validation was supported in part by stale evidence; and (5) the statements attributed to Harris and Martin are far less damning that the statement in *Bruce*.[42]

---

[41](...continued)
confirmed what Harris said, is that it sounded like a plan, that they were going to file paperwork on me." [Deposition, p. 66]

[42]  The Ninth Circuit in *Bruce* summarized the evidence as follows:
I asked Washington if he had contacted the IGI's at North Kern and Pelican Bay. He responded, "No.  And I don't have to."  Washington then stated that I had "pissed off higher-ups" with my "complaints and protests," and the last incident "where you acted as spokesperson for other prisoners' complaints was the last straw."  Washington then stated that Lt. Coziahr and himself were ordered by these "higher-ups to validate you." . . . Washington stated also to me, "The higher-ups want you validated to make an example out of you to discourage similar complaints and protests . . . the bosses don't care for organized complaining . . . .  Your family filing a complaint to the Warden wasn't a good idea either."  This is "exactly the sort of thing that pisses off the higher-ups."

(continued...)

Second, while it may be true that the reports filed by Harris and Martin were inaccurate, there is no evidence that, other than Howard's denial that it was his, they knew the materials allegedly found in Howard's possession did not belong to him.  Howard's claim is based solely upon supposition and speculation, which is insufficient as a matter of law to create a question of fact to be decided by a jury.[43]

This Court has considered the other arguments advanced by Howard and finds them to be unpersuasive, irrelevant, or without substantial merit.  These are discussed briefly.

With respect to his due process claim, as noted above, prisoners have no liberty interest in their classification status as a gang member.[44]  Prison officials need only provide an inmate with notice of the charges against him and an opportunity to present his views.[45]  Furthermore, a prison gang affiliation need only be supported by "some evidence."[46]  The fatal omission in Howard's position is that he neither alleges nor argues that, even if the evidence

---

[42](...continued)
Washington then stated "the Warden called me this morning asking about your validation." . . . I asked Washington what evidence was being used against me, he refused to say except to state, "it was already in your c-file when it was sent to our office."  *Bruce*, 351 F.3d at 1289.

[43] *See Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 345–46 (9th Cir. 1978).

[44] *Carrea v. Beard*, 588 Fed. Appx. 697, 697 (9th Cir. 2014) (unpublished) (citing *Moody v. Daggert*, 429 U.S. 78, 88 n.9 (1976)).

[45] *See Wilkinson v. Austin*, 545 U.S. 209, 228–29 (2005) (notice and opportunity to be heard are adequate safeguards for placement in maximum custody).

[46] *See Bruce*, 351 F.3d at 1287 (applying the standard enunciated in *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

provided by Harris was false and is disregarded, the remaining evidence was insufficient to support the gang-affiliation finding. Consequently, Howard has failed to carry his burden of proof.

Finally, at the time Howard was authenticated as a BGF gang member he was held in Ad-Seg.[47] Consequently, Howard's validation as a gang member had *no effect* on the conditions of his confinement. That is, Howard was confined in Ad-Seg for reasons independent of his gang membership, i.e., his attempted murder of a correctional officer. Thus, even if this Court were to find in favor of Howard with respect to the challenged evidence, it would have no practical effect upon the conditions of his confinement. ***The acts of Harris and Martin did not result in, nor could they have resulted in, any change to the conditions of Howard's confinement***. Put another way, because there is no causal connection between the actions of either Harris or Martin and his confinement in Ad-Seg, Howard has not suffered any compensable injury as result of that confinement.

Nor, because it is not within the purview of federal courts to interfere directly with prison administration in the manner requested by Howard, may this Court grant Howard either declaratory or injunctive relief.[48]

---

[47] Howard's own testimony indicates that he had been housed in the SHU at Corcoran State Prison from some time in 2008 until his transfer to CSATF. Howard Deposition, p. 12.

[48] *Id.* at 1290. Furthermore, because Howard is now housed at Pelican Bay, this Court cannot grant any effective equitable relief in any event.

**V.     ORDER**

Based upon the foregoing, Defendants' Motion for Summary Judgment at **Docket 55** is **GRANTED**.

The First Amended Complaint on file herein is hereby **DISMISSED**, with prejudice. Judgment thereon to be entered in favor of Defendants and against Plaintiff.

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims, or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, any appeal would be frivolous or taken in bad faith.[49] Accordingly, Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

The Clerk of the Court is directed to enter final judgment accordingly, which states that the dismissal counts as a "strike" under 42 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 8th day of April, 2015.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[49] 28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of *in forma pauperis* status is appropriate if the appeal is frivolous).

ORDER GRANTING MOTION AT DOCKET 55
*Howard v. Lane*, 1:12-cv-01875-RRB - 17