# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD,<br><br>    Plaintiff,<br><br>v.<br><br>M. HARRIS, et al.,<br><br>    Defendants. | Case No.: 1:12-cv-01875-JLT (PC)<br><br>FINDINGS ON REMAND |

When this matter was remanded, the Ninth Circuit Court of Appeals instructed this Court "to determine the credibility of Howard's letter of apology." (Doc. 72 at 2) Toward this end, the Court has considered various records on file in this Court and with the Court of Appeals, additional documents provided by the parties and on June 27, 2018, the Court held an evidentiary hearing.

Notably, Mr. Howard denies that he made threats in the April 14, 2015 letter and, consequently, though the Court has no doubt that he is sorry he wrote the letter—he believes the whole thing has been "blown out of proportion" (Doc. 91 at 82) —the Court cannot conclude he is sorry for making the threats contained in the letter.

**I.**    **Review of the Evidence**

    **A.**    **The April 14, 2018 letter**

As is well-known to the parties, on April 14, 2015, Mr. Howard wrote a letter to the Deputy Attorney General then-assigned to the matter, Heather Heckler. In the letter Mr. Howard expressed

1 anger over the recent ruling of the trial court which granted summary judgment to the defendants.  The
2 letter indicates that his purpose for writing was threefold: 1. To inform Ms. Heckler that he did not
3 receive her reply brief; 2. To notify her that he intended to appeal; and 3. To inform her that "if this
4 case is not reversed as required, or settled by CDCR as it should, I do intend on killing one or more of
5 CDCR employees once I've made my final peace . . ."  The letter indicates that Mr. Howard intends to
6 allow the court process to go forward and does not wish to resort to violence, but that he "will not
7 avoid it either if it is required."

In his letter, Mr. Howard complains of "individuals who desire to continue to suppress, penalize and violate our rights without accountability . . ."  He complains of the inmates being "instructed to follow the rules and regulations implements by CDCR or confide in the judicial system when it only turns a blind eye and shatters the wounded spirits . . ."  He complains also of the ruling by the trial judge which "cannot be logically explained or understood by anyone as to the judges [sic] decision in this case other than [to] those who violate the law, CDCR regulations, and who have denied me due process and justice, but who continue to recommend I use the 602 appeal process and court system . . ."  He states that "it isn't I who didn't apply, or follow the law, yet unfortunately it will only take acts of violence to get people to actually realize whats [sic] transpiring with this case . . . but the same acts of violence will require other judges to correct this problem if the higher courts fail . . ."  He admits to being willing to die in the violence when he states, "although its certainly possible that I may also be killed and never live to see the outcome of justice and correcting this matter fact is I am prepared to die standing and fighting for my rights and required justice than to die on my knees and be counted amongst broken men who are held unjustly in these (SHUs) . . ."  He concludes by stating cryptically that, "I will allow this case to run its course being that I have given my word, and that I only desire justice and peace, . . . and, though I truly desire a resolution, fact is time will test the fate of me and others accordingly."

**B.  Mr. Howard's opposition to the motion to dismiss**

At the time the opposition to the motion to dismiss was due, Mr. Howard was proceeding without a lawyer.  In the opposition he personally filed, he took the position that the Attorney General misrepresented his April 14, 2015 letter and took statements from it out of context for the defendants'

own ends. He explained the background related to the underlying action and then stated, "Appellant Howard forwarded a letter to Defendant's Attorney, Heather M. Heckler on April 14, 2015 after the case was decided in an attempt to explain and clarify why violence reaches its peak." He took umbrage at the fact that his "2009 . . . conduct was exploited and made CDCR employees to appear to be victims of senseless violence." He explained that it was the prison guards, whom he referred to as "these people," who were at fault for the 2009 attempted murder of the prison guard because he had "exhibited that [he] applied the law without resorting to violence . . . its these people and this type of conduct that creates the conditions for violence, and force people to riot, protest and kill . . ."

After this explanation, he argued that the appeal should not be dismissed "based on conduct that transpired before an appeal was even taken" and noted he wrote the letter before he filed the notice of appeal. He observed that he had refrained from writing any threatening remarks to the Deputy Attorney General handling the appeal. He strenuously objected to the filing of the April 14, 2015 letter, and asserted that in doing so the Attorney General has "the audacity to prejudice this court at the responding brief stage in an effort to file motions to prevail on a dismissal." He concluded his opposition by stating that he "now understand[s] not to write letters to the Attorney General under no circumstances."

### C. The January 2, 2018 letter

Through appointed counsel and along with his reply brief, Mr. Howard filed a letter, dated January 2, 2018. In this letter, though not identifying any unlawful statements he made in his April 14, 2015 letter, Mr. Howard, "first apologizes to this court for things expressed in violation of the law."

He also "apologizes for stabbing Officer Botello, who was not my intended target." He notes that Botello admitted that once Mr. Howard recognized that Botello was not his intended target, he stopped stabbing the officer. He then clarified that, "the incident of 2009 had nothing to do with correctional officers/or George Jackson in general, but to challenge continuous violations, and lack of accountability within the 602 appeal system." He explained as he had done in his April 14, 2015 letter, that he had complied with the rules by filing grievances but that the CDCR failed to improve the situation. The January letter once again explained the unfairness of the events in the underlying action

and how, though he has acted within the law, the correctional officers do not and the CDCR fails to hold them accountable.

Mr. Howard asserted that his April 14, 2015 letter was an attempt to explain "why these people [correctional officers] get hurt, but [are] quick to proclaim to be victims in the public eye as victims of senseless violence, yet never accepts [sic] responsibility for their actions." He explained that he "used my situation as a [sic] example as to what avenue we have but violence when the system fails . . ." Mr Howard admits that he "did attack a correctional officer in 2009, fact is prisoner also filed numerous civil actions since that day (exactly seven (7)) therefore prisoner demonstrated his ability to follow the law, so in essence my letter to the Attorney General was proof that I used great restraint, followed the law, and submitted real evidence [in support of his underlying case] . . . so my argument was and still is what am I supposed to do?"

Mr. Howard concluded his letter by saying,

> Prisoner hereby accepts responsibility for my actions, and regardless of right or wrong, or my reasons to assault an officer in 2009 it was I who lost that battle and will continue to lose, as I made that mistake, but shouldn't have that situation exploited to justify the states contentions because this appeal originated from violations of my rights . . . therefore, just as I have accepted responsibilities for my actions, and penalized to the fullest extent of the law by the court for breaking the law, then in reality this courts should apply the law accordingly and ensure the defendants is [sic] held accountable for their actions.

### C.     The evidentiary hearing

At the hearing, Mr. Howard repeatedly denied that he made a threat in the April 14, 2015 letter. He iterated and reiterated that he had complied with the law but that the correctional officers and the CDCR had not. He stated that he made the statements in the April 14, 2015 letter only by way of an example of why violence occurs in prison. Even when confronted with the specific language of the letter in which he stated an intention to kill people if the case was not reversed or settled by the CDCR, he denied that he made a threat.

On the other hand, the Court confronted Mr. Howard with his January 2, 2018 letter, in which he apologized for his statements in violation of the law and asked to explain what "violations of the law" he was citing. He responded,

THE WITNESS: Well, any threat as they characterize a threat is a violation of law.

4

| | |
|---|---|
| 1 | THE COURT: Right. |
| 2 | THE WITNESS: I understand that. |
| 3 | THE COURT: So you're -- but you said you didn't make any threats. |
| 4 | THE WITNESS: Well, I mean, according to the letter I made a threat. Threatening to do harm |
| 5 | to anybody is a threat. |
| 6 | THE COURT: Right. |
| 7 | THE WITNESS: Right. So I explained to them -- |
| 8 | THE COURT: You also said now in your opposition to the motion to dismiss that you filed |
| 9 | back in -- earlier, as I mentioned, that at all times of complying with the law, and then you |
| 10 | said, "I apologize for the violations of the law." What are you talking about there? |
| 11 | THE WITNESS: I don't even remember. |

(Doc. 91 at 34)

Upon cross examination, Mr. Howard stated he wrote the April 14, 2015 letter "in anger," and that his "initial thoughts" were to kill correctional officers if the case did not resolve in his favor or the CDCR did not settle it. (Doc. 91 at 57) He then backtracked and asserted, "I didn't say that I'm going to do this. I said, man, I hope to find peace and justice and accountability with this. I didn't say I was going to do anything to anybody. It was just trying to explain clearly that since I've been in prison, this is why I understand violence transpires in prison." Id. at 59.

Mr. Howard acknowledged that at the time he wrote the April 14, 2015 letter, he understood there were other ways to address his complaints. Id. at 59. Nevertheless, he recalled telling the Court—in connection with other cases he was settling—that he wanted to resolve Howard v. Harris before it escalated to violence. Id. at 69, 72. He explained, "I'm just -- what she [The Deputy Attorney General] keep making an issue of is this. I mean, you have to understand my position. This is a complete injustice. I mean, if I wanted to die to bring the matter to the Court, hey, I'm a dead man. But what I'm saying, 'Hey, you need to overturn this.' I don't care about losing my life, right. I have to do whatever I feel is appropriate to bring exposure to this case."

When the Deputy Attorney General persisted, Mr. Howard stated,

So what I'm saying is like, look, if you continue to do injustice to me and violate my rights, right, and there's no accountability, it's like you're basically telling me you have

> leeway to do what you want. I mean, I don't have a right to prevail? I don't have a right to get angry? I don't have the right to resist, fight back? I mean, are you telling me that you conspire to put me in the hole for the remainder of my life and I ain't supposed to have an anger issue with this?

(Doc. 91 at 76) He stated, "See, prisoners don't want to be violent. Prisoners don't want to rebel period. [¶ ] I mean, how else do you bring about change? I mean, even on the streets you see violence." Id. at 80.

Initially, Mr. Howard stated that he realized that he used "a poor choice of words," when he received a copy of the letter attached to the motion to dismiss. (Doc. 91 at 36) However, he then corrected himself and stated that at that time, Ms. Heckler did not respond to the letter. "She never notified the Courts. Nobody never said nothing to me**. So I didn't never think that -- at that time that I said anything outrageous, right. I thought I wrote a fine letter explaining these are the facts of this case**." (Doc. 91 at 40-41, emphasis added)

Because he stated that he wasn't sorry for the statements made in the April 14, 2015 letter when he filed his opposition to the motion to dismiss in November 2015, the Court inquired when he first felt sorry for it. He responded, "I believe I was -- I believe it was after I had an attorney visit, and I spoke with my attorney, and –" (Doc. 91 at 43) Nevertheless, Mr. Howard denied that he intended to attempt to influence how the Court would decide his appeal. Id. at 44. Indeed, seemingly, Mr. Howard was shocked that the Court of Appeal would find out about it. Rather, he remained outraged that the Attorney General would provide the letter to the Court. He stated, "They violate my rights. They keep giving me these trumped up charges. They keep arguing these frivolous threats, but why the Attorney General ain't argue to the Court that, look, this 115[1] has been dismissed and it was a violation." (Doc. 91 at 46)

Mr. Howard concluded by saying that the April 14, 2015 letter was a "poor choice of words." (Doc. 91, at 99) When asked what words he should have used, his only answer was the he shouldn't

---

[1] Mr. Howard was referring to the rules violation report relied upon by the Attorney General to demonstrate that Mr. Howard had continued in acts or threats of violence. (Doc. 87-1 at 163-176) Though Mr. Howard described this rules violation as a "trumped up charge," the information his attorney provided demonstrated not that the acts did not occur—indeed, there was a corroborating witness—but that the RVR was dismissed because he was not provided the RVR within 15 days and the disciplinary hearing was not held within 30 days.

have written the letter at all. Id. Finally, he said, confusingly, "At the time, I didn't -- I wasn't looking at threatening anybody. I was just trying to point an example, and it came out as a threat. I wrote it as a threat, and I -- I don't -- ain't nothing I can do about it. It was a mistake. I shouldn't have wrote it period, you know, but I -- it's just -- it's hard to explain. I wrote it out of anger. I mean, I just don't see nothing else in the end result. If I'm saying, look, man, I'm doing everything required, what else I'm supposed to do? I mean, but violence is never appropriate under any circumstance, period." (Doc. 91 at 102)

### D. Analysis

The Court has little doubt that Mr. Howard is sorry that he wrote the April 14, 2015 letter but also has little doubt that he is <u>not</u> sorry he made the threats. The fact that he refused to acknowledge that he made threats makes any other conclusion impossible. Even when confronted with the exact language he used, the exact threat he made, he denied he made a threat. Repeatedly, he failed to take responsibility for making the threats and laid blame for the need to write the letter on the correctional staff, the prison grievance system and the Office of the Attorney General, which he believes is complicit in failing to bring to light the failures of the prison system.

Through Mr. Howard's testimony, it became apparent that he believes in the grievance/legal system up to the point when the outcome is inconsistent with his views.[2] He believes that violence is justified and a legitimate and, indeed, a required response to certain situations, which include his frustration that the penal system is not held sufficiently accountable[3]. He has little concern for those who get hurt as a result of his retributive violence and takes little responsibility for it.

For example, while acknowledging that violence is not the answer, he continued to blame his 2009 stabbing of the correctional officer on the conduct of other correctional officers and the CDCR.

---

[2] As an aside, Mr. Howard repeatedly stated that the April 14, 2015 letter was an attempt to shed light on intolerable prison conditions. However, it appears that he is not so much interested in reforming the prison system as he is in receiving a personal benefit from his litigation—whether in the form of a settlement for money or having his gang validation reversed.
[3] Mr. Howard repeatedly asked the Court rhetorically—or maybe not so rhetorically—"What am I supposed to do?" when his complaints are not dealt with to his satisfaction or correctional officers are not held accountable. He seemed to believe that others are not faced with injustice or when they are, they invariably resort to violence. Along these lines, he referred to the myriad of violence and attacks on police officers as examples of this. He is unaware, seemingly, that others suffer and have suffered far greater injustice and still managed to resist acts of violence or threats of violence. The Court commends him to the lives of Dr. Martin Luther King, Jr., Mahatma Gandhi, Fred Korematsu, Nelson Mandela and Jesus Christ, for example.

7

He stated, "Guess what? The problems continue. The problems continue. The problems continue, and there's no accountability. And, see, what these people failed to tell this Court, and I'm going to be honest with you, your Honor, <u>this is why this officer got assaulted</u>." (Doc. 91 at 51, emphasis added) This is of significant concern to the Court because he admits that the person he nearly murdered had no role in creating the problems he was claiming to bring to light by the attack. He seems to think that the fact that he didn't finish her off, speaks favorably to his character because he stopped himself when he realized he was killing the wrong person. Likewise, despite having clear experience that attempting to kill this innocent victim failed to result in any solution to the problems as he perceived them, once again, when confronted with a situation he found to be intolerable, his April l4, 2015 letter clearly indicates that he decided to kill other, unrelated people in response.

It was also apparent to the Court that in making his April 14, 2015 threats, he did not anticipate that the letter would make its way to the Court of Appeals which undercuts that he intended to influence the outcome of the appeal. The Court *does* conclude, however, he intended the letter to be a statement of what he would do if the appeal did not resolve in his favor or if the CDCR did not settle the case.

Because Mr. Howard would not admit that he made threats in his April 14, 2015 letter, the Court does not conclude that, when writing his January 2, 2018 letter, that he meant to express sorrow for making the threats. Rather, he is very sorry that making the threats might mean that the Court dismisses his appeal. The fact that he maintains that his letter was "blown out of proportion" and that he blames the Attorney General for bringing it to the Court of Appeals and claims the Deputy Attorney General misstated what he wrote in the letter, made clear to this Court that he fails to appreciate the gravity of his conduct. Absent his admission that he made threats and absent an understanding of why the letter has not, in fact, been "blown out of proportion," the Court cannot conclude that he is sorry for making the threats.

In writing these statements, the Court is fully aware that Mr. Howard will believe that the Court did not hear or understand his concerns. To the contrary, the Court fully understands his sense of outrage and, if what he is saying is true about what occurred in the underlying case, his outrage is justified. However, in this Court's opinion even if his outrage was justified, this does not explain or

excuse the threats he made on April 14, 2015.

**FINDINGS**

Upon this analysis, the Court **FINDS**:

1. Mr. Howard's apology set forth in the January 2, 2018 letter extends only to the fact that he wrote the April 14, 2015 but not as to the threats made in it;

2. By writing the April 14, 2015 letter, Mr. Howard did not intend to coerce the Court of Appeals to find in his favor but did intend to coerce the CDCR to settle with him or to take steps to ensure he won his appeal.

**ORDER**

The Clerk of the Court is DIRECTED to provide this document to the Ninth Circuit Court of Appeals forthwith.


IT IS SO ORDERED.

Dated: **July 11, 2018**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE